**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 21 CR 19 |
| | ) | |
| | ) | Hon. Steven C. Seeger |
| DAVID FOLEY | ) | |
| | ) | |

**DEFENDANT DAVID FOLEY'S POST-TRIAL MOTION PURSUANT TO RULE 33**

Now comes the Defendant, David Foley, by and through his attorneys, Nishay K. Sanan and Cece White, and hereby submits his motion pursuant to Federal Rule of Criminal Procedure 33 for a new trial. In support of this motion, Mr. Foley states as follows:

**I. Background**

On January 11, 2021, the Grand Jury returned an indictment charging David Foley with multiple counts of wire fraud and securities fraud. Dkt. 1. Counts 1-8 of the indictment allege wire fraud in violation 18 U.S.C. § 1343; Count 9 alleges securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. §240.10b-5; and Count 10 alleges securities fraud in violation of 15 U.S.C. §§77q(a), 77x. *Id.* Count 5 charges Mr. Foley only, and all other counts charge Mr. Foley as well as co-defendant Bennie Blankenship who ultimately pled guilty and testified at trial as a cooperating witness. The indictment describes a scheme to defraud taking place from March 2013 to October 2016 in which Mr. Foley allegedly engaged in fraud in connection to the sale of shares in NanoTech Gaming, Inc. ("NTGL"). More specifically, the indictment alleges that Mr. Foley first caused the shares to be sold without a restrictive legend to make them more appealing to a buyer and then manipulated the share price to maximize the amount that he would receive in exchange for the unrestricted shares.

1

The Defendant filed multiple pretrial motions. Dkt. 49, 50, 52. Relevant here, he filed a Motion to Dismiss arguing that Counts 1-8 alleging wire fraud were duplicitous and that Counts 9-10 alleging securities fraud were multiplicitous. Dkt. 49. The motion was fully briefed. Dkt. 57, 58, 59. In a supplemental response addressing only Counts 9 and 10, the government maintained there was no multiplicity as originally pled but also sought leave to amend its indictment so that Count 9 would allege fraud in the *purchase and sale* of securities while Count Ten would allege fraud in only the *offer* of securities. Dkt. 155. The Defendant did not object and the motion was granted with the understanding that this ruling did not impair the Defendant's previous arguments. Dkt. 161. The government filed its amended indictment which includes these changes to Counts 9 and 10 and a correction to other minor scrivener's errors. Dkt. 165. Further argument was heard on the Defendant's motion to dismiss at the final pretrial conference on October 10, 2024. Dkt. 184. As of the date that the instant motion is filed, there has been no ruling on the Defendant's Motion to Dismiss.[1]

In preparation for trial, the parties filed pretrial materials such motions *in limine* (Dkt. 113, 121, 122, 132), witness lists (Dkt. 111, 170) and exhibits lists. Dkt. 174. Relevant here, the government also sought to admit certain statements pursuant to Rule 801(d)(2)(E) in a *Santiago* proffer. Dkt. 115. The Court granted this motion (Dkt. 140), over the Defendant's written objection Dkt. 129. The Court further granted the government's motions *in limine*. Dkt. 175, 178. On October 10, 2024, a final pretrial conference was held at which the Court orally denied the Defendant's motions *in limine*. Dkt. 184.

On October 15, 2024, the case proceeded to jury trial. Dkt. 181. The Government relied on the same evidence that it presented in support of the alleged scheme to defraud in the wire fraud

---

[1] Defense counsel believes that the Court may have orally ruled at the October 10, 2024 pretrial that it was denying the motion to dismiss Counts 1-8 as duplicitous but no such entry is reflected on the docket. There was no ruling as to the multiplicity of counts 9-10.

2

counts in support of the two counts of conviction for securities fraud. The government presented witnesses who were allegedly involved in causing the shares to become unrestricted, as well as witnesses from River North Equity, who purchased the NTGL shares and Bennie Blankinship, Mr. Foley's alleged coconspirator. Other witness testimony was admitted through purported co-conspirator statements pursuant to Rule 801(d)(2)(E). None of the evidence, as the jury found, proved there was a scheme to defraud that Mr. Foley knowingly or willfully participated in. On October 25, 2024, the government rested its case, and the Defendant moved for judgment of acquittal pursuant to Rule 29. Dkt. 210. That same day, the defense rested and reasserted the Rule 29 motion. *Id.* On October 29, 2024, the government delivered its closing argument. Dkt. 214. The Court then held a final jury instruction conference at which it ruled on the government's proposed instructions (Dkt. 200), the Defendant's objections (Dkt. 201), and the Defendant's proposed instructions (Dkt. 202) to ultimately finalize the jury instructions. Dkt. 215. On October 30, 2024, the defense delivered its closing argument, followed by the government's rebuttal, final instructions were given (Dkt. 215), and the jury began deliberating. Dkt. 220.

On November 4, 2024, the jury reached a verdict finding Mr. Foley not guilty of wire fraud as alleged in Counts 1 through 8 and guilty of securities fraud as alleged in Counts 9 and 10. Dkt. 230. The Court set a deadline for filing the instant post-trial motion under Rule 33 and took the Defendant's oral motion under Rule 29 under advisement. Dkt. 230. The Defendant addresses only Rule 33 here but notes for the record that he persists in his pending motion pursuant to Rule 29.

    **II.    Motion for a New Trial Pursuant to Rule 33**

Pursuant to Rule 33, the court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). Courts interpret this standard to "require a new trial in a variety of situations in which trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). In considering a motion

3

for a new trial, a district judge may assess the credibility of the witnesses and "may grant a new trial if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States v. Conley*, 875 F.3d 391, 399 (7th Cir. 2017). A new trial is warranted in "rare cases in which consideration of the evidence leaves a strong doubt as to the defendant's guilt of the charged offense." *United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016). Here, there are trial errors and strong doubt as to Mr. Foley's guilt on Counts 9 and 10. Thus, a new trial is warranted.

### A. Jury Instructions for Securities Fraud Elements

The Court erred in refusing to instruct the jury that it must be unanimous on how the securities fraud statutes were violated. The statutes charged in Counts 9 and 10 both have an element containing three subparts. Specifically, the government must prove that a defendant, in connection with a securities transaction, did one of the following: (a) employed a device, scheme, or artifice with the intent to defraud; (b) made untrue statements of material facts or omitted necessary material facts; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5; 18 U.S.C. § 77q(a). *See* **Exhibit A** – Complete Statutes. The parties agreed that the jury should be instructed that the government was not required to prove all three types of unlawful conduct. *See* **Exhibit B** - Comparison of Proposed Jury Instructions. However, the Defendant requested that the jury also be instructed, "you must agree unanimously upon at least one of such subparts before you can convict for such offense." *Id.* The Court rejected this request and did not include any unanimity language in its elements instructions for Counts 9 and 10. *Id.*

This was an error in that the nature of the allegations involved in this case warranted an unanimity instruction. In general, an unanimity instruction is required when the government alleges more than one possibility for an element of the crime but is not required when the government contends that the defendant committed an element of the crime using one or more of several

4

possible means. *Richardson v. United States*, 526 U.S. 813, 817 (1999). For example, a jury must unanimously find that the defendant participated in a scheme to defraud but it may disagree on the specific false promises involved in that scheme. *See e.g., United States v. Daniel*, 749 F.3d 608, 613-14 (7th Cir. 2014). The distinction between an element and the means to accomplish an element is not always clear. For example, other circuits have disagreed on how to treat the subparts of the relevant securities fraud statutes. *Compare United States v. Yeaman*, 194 F.3d 442, 452-55 (3rd Cir. 1999) *to United States v. Weiner*, 578 F.2d 757, 788 (9th Cir. 1978). The Seventh Circuit does not appear to have ruled on this issue.

The statutes themselves suggest that they describe more than one possibility for an element of the crime, as opposed to describing different means to accomplish a single element. The three subparts describe different possible acts without any indication that they can all be grouped together into one undefined single element. *See* **Exhibit A** at 2, 8**.** For example, a defendant who omitted one necessary material fact to a sale could be guilty of securities fraud without having engaged in an ongoing scheme. These are not two different means to accomplishing a single element; they are different possible elements. The government in this case alleged all three subparts in both Count 9 and 10 and the jury should have been instructed that unanimity was required as to which subpart the government proved beyond a reasonable doubt.

Regardless of whether the Court finds that each subpart is an element or the means to accomplish an element, the Defendant's requested unanimity instruction should have been given in this case. A specific unanimity instruction is also warranted if there is a genuine possibility of juror confusion. *See e.g., United States v. Barai,* 55 F.4th 1245, 1249 (9th Cir. 2022). Here, the government alleged in every count the same complex scheme to defraud occurring over multiple years and involving many different companies, individuals, and events. There were no specific transactions identified in Counts 9 and 10. The government presented the same evidence in support of the

scheme for the purposes of all counts. Without an unanimity instruction, the jurors likely had different positions on what the government did and did not successfully prove. The verdict ultimately demonstrates that the jury was, in fact, confused. They acquitted on all counts that required the government to prove that the Defendant participated in a scheme to defraud. However, Counts 9 and 10, on which the jury convicted, also required the government to prove the existence of the same fraudulent scheme. For these reasons, it was an error to deny the Defendant's request for a unanimity instruction as to Counts 9 and 10 and a new trial is warranted.

### B. Admission of Coconspirator Statements

The Court further erred in permitting the admission of coconspirator statements. In its pretrial filing (Dkt. 115), the government sought to admit certain statements pursuant to Rule 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978). A statement offered against a defendant and made by a coconspirator may be admitted if the government shows: (1) a conspiracy existed at the time of the conversation; (2) the defendant and the declarant were both members of the same conspiracy; and (3) the proffered statements were made during the course of and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). *Also see Bourjaily v. United States*, 483 U.S. 171, 175 (1987). In this circuit, the government may make a preliminary showing that coconspirator statements are admissible in a written pretrial filing, known as a *Santiago* proffer, that describes its evidence in support of admission. *Santiago*, 582 F.2d 1128. Here, the Court conditionally admitted the co-conspirator statements (Dkt. 140), and then permitted their use at trial, both over defendant's objections. Dkt. 129.

The Court should now revisit this ruling for the purposes of Rule 33. Regardless of whether the government's *Santiago* proffer was sufficient for conditional admission, the government was required to "close the evidentiary loop at trial" by fulfilling its burden to demonstrate at trial that each statement satisfied the requirements of Rule 801(d)(2)(E). *United States v. Davis*, 845 F.3d 282,

286 (7th Cir. 2016). The government ultimately failed to do so in that it failed to demonstrate that a conspiracy existed between Mr. Foley and anyone else. To establish a conspiracy, the government was required to prove that: (1) two or more people agreed to commit an unlawful act, and (2) the defendant knowingly and intentionally joined the agreement." *United States. v. Stevenson*, 656 F.3d 747, 753 (7th Cir. 2011). As the Seventh Circuit has instructed, "[a] conspiracy is not merely an agreement… [i]t is an agreement with a particular kind of object – an agreement to commit a crime." *United States v. Thomas*, 284 F.3d 746, 751 (7th Cir. 2002).

Here, the government failed to prove that Mr. Foley and any others agreed to commit a crime. For example, Mr. Foley had conversations with his wife and brother in which there were agreements about topics relating to how to run the company, but the government did not prove that there was an agreement to do anything unlawful. Further, Blankenship's testimony demonstrated that he acted on his own. Mr. Foley and Blankenship discussed what actions to take, but Blankenship confirmed that he often ignored Mr. Foley's advice. He admitted that he made the decision to recruit others and take other actions within the alleged "pump and dump" scheme on his own. He admitted that he dumped the stocks while everyone was buying for his own benefit.

Further, the verdict supports a finding that the government failed to prove that a conspiracy, or any scheme, existed. The jury ultimately acquitted Mr. Foley on all counts requiring the government to prove that he participated in a scheme to defraud. The government relied on the same allegations connected to the scheme to defraud to prove there was a conspiracy in its *Santiago* proffer and at trial. For these reasons, the Court erred in admitting conspirator statements and that error warrants a new trial.

### C. Additional Support for Ordering a New Trial

There are other issues that lend further support to the Defendant's request for a new trial. First, the Court erred in failing to grant the Defendant's Motion to Dismiss which is still pending

7

before this Court today. The Defendant's motion argues that Counts 1-8 alleging wire fraud are duplicitous and Counts 9-10 alleging securities fraud are multiplicitous. Dkt. 49. The Defendant maintains that the indictment should have been dismissed for all the reasons included in briefing and argued in Court. Further, the government's amendment to distinguish between a *purchase or sale* in Count 9 and an *offer* in Count 10 does not cure the multiplicity issue. First, as is addressed at length in the Defendant's reply brief (Dkt. 59 at 5-9), the distinction between "purchase or sale" in Section 10(b)[2] and "offer or sale" in Section 17(a) is important in the context of civil cases because a private citizen may sue for damages under Section 10(b) but not under Section 17(a). *SEC v. Tourre*, 2013 WL 2407172, at *6-9 (S.D.N.Y. 2013). A private citizen suing for damages under Section 10(b) must prove economic loss, causation, and reliance to recover. *Id.* Section 10(b) does not apply to "offers," because there would be no economic loss if one received an offer that was never consummated. However, when the SEC files a civil enforcement action under Section 17(a), it need not prove damages because the focus is on the fraud, not whether the fraud caused an economic loss. Thus, Section 17(a) is directed at an "offer or sale" because an enforcement action can be pursued regardless of whether the fraud results in damages, such as when there is a fraudulent offer without a consummated sale.

In the criminal context, where proving damages is not required under either statute, the distinction between "sale," and "offer," is no longer relevant. The Supreme Court has held that the terms "offer," and "sale" in the Securities Exchange Act were intentionally defined broadly by Congress so they would be "expansive enough to encompass the entire selling process…" *United States v. Naftalin*, 441 U.S. 768, 773 (1979). Thus, the Court found that Section 17(a) "does not

---

[2] Count 9 charges a violation of 15 U.S.C. § 78j(b), 15 U.S.C. § 78ff, and 17 C.F.R. § 240.10b-5 which is commonly referred to as "Section 10(b)" in reference to the numbering scheme of the relevant act. Count 10 charges a violation of 15 U.S.C. § 77q(a) and 15 U.S.C. § 77xx which is commonly referred to as "Section 17(a)," again in reference to the numbering scheme of the relevant act. The statutes are included in full in **Exhibit A.** Counts 9's offense will be referred to as "Section 10(b)" and Count 10's offense will be referred to as "Section 17(a)," for clarity.

8

require that the fraud occur in any particular phase of the selling transaction." *Id.* Therefore, proving a violation of Section 17(a) does not require the government to prove that fraud occurred specifically in the offer phase of a selling transaction. To prove a violation of Section 10(b) (Count 9) and Section 17(a) (Count 10), the government was required to prove that there was fraudulent conduct that had some nexus or relation to the selling process of NTGL shares. Thus, there is no element of the offense alleged in Count 9 that is not also an element to prove the offense alleged in Count 10 and the counts are multiplicitous.

Further, the government did not prove a separate instance of fraud in connection with an unconsummated offer to purchase NTGL securities. The government's purported offer was an email sent by David Foley to Michael Chavez in which Mr. Foley asked, "now that NTGL has good volume and support can River North do 40m shares at 70%?" GX105 (cleaned up). This is a question posed to an intermediary, not an offer that could be accepted and binding. Even if this email can be construed to contain an offer to River North, the evidence demonstrated that shares were sold to River North. Thus, there was no unconsummated offer proven at trial that could cure the otherwise identical allegations in Counts 9 and 10. The government's evidence purported to prove one scheme to defraud that ultimately resulted in the sale of shares to River North. In connection with the allegedly fraudulent sale of NTGL securities to River North, the Defendant was convicted of two separate counts of securities fraud. For these reasons, the Court should have granted the Motion to Dismiss or should have merged Counts 9 and 10 into a single count. Based on these errors, the Court may grant a new trial pursuant to Rule 33.

Further, the Court should grant the Defendant's motion under Rule 33 because the jury's verdict was inconsistent and contrary to the manifest weight of the evidence. The Defendant's primary requested relief is a judgment of acquittal pursuant to Rule 29, as was argued orally and taken under advisement, but the Court may instead order a new trial pursuant to Rule 33. *See e.g.*

9

*United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) quoting *United States v. Morales*, 910 F.2d 467, 468 (7th Cir. 1994). ("[i]f the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial").

Here, the jurors appear to have reached a compromise by acquitting on Counts 1-8 and convicting on Counts 9-10. These verdicts are inconsistent in that the government was required to prove the existence of the same fraudulent scheme that it alleged in all counts of its indictment. The jury found that no such scheme existed for the purposes of wire fraud while convicting based on the same scheme for the purposes of securities fraud. Further, the evidence in support of Counts 9 and 10 was severely lacking. The government did not prove that a fraudulent offer existed for the purposes of Count 10, did not prove that the Defendant participated in a scheme to defraud, and did not prove that he acted willfully, knowingly, or with the intent to defraud. For these reasons, the Court should grant the Defendant's motion for new trial pursuant to Rule 33.

### III. Conclusion

For these reasons and those stated on the record in his oral motion pursuant to Rule 29, the Defendant, David Foley, respectfully requests that this Court enter a judgment of acquittal, or in the alternative, order a new trial.

Respectfully submitted,

*/s/ Nishay Sanan*

*/s/ Cece White*

NISHAY K. SANAN
CECE WHITE
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
312-692-0360