**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 21-cr-19-1 |
| | ) | |
| DAVID FOLEY | ) | Hon. Steven C. Seeger |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant David Foley went to trial on 10 counts of fraud, including eight counts of wire fraud (Counts 1–8) and two counts of securities fraud (Counts 9–10).

Before trial, Foley moved to dismiss the indictment for two reasons. First, Foley argued that Counts 1–8 (wire fraud) are duplicitous. Second, Foley argued that Counts 9–10 (securities fraud) are multiplicitous.

This Court took the motion under advisement, and the case went to a jury. After weeks of testimony, the jury returned a verdict of not guilty on Counts 1–8, and returned a guilty verdict on Counts 9–10.

For the reasons that follow, Foley's motion to dismiss Counts 1–8 is denied as moot. Foley's motion to dismiss Counts 9–10 is denied.

## Legal Standard

"An indictment is sufficient so long as it: (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. Miller*, 883 F.3d 998, 1002 (7th Cir. 2018) (cleaned up).

"To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013).

The government has some latitude when it comes to the phraseology of an indictment. "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.* (citing *United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003)). The Court reviews indictments "on a practical basis and in their entirety, rather than in a hypertechnical manner." *See United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (cleaned up).

**Analysis**

Foley moved to dismiss the indictment on two similar-sounding grounds. He moved to dismiss the wire fraud counts as duplicitous, and moved to dismiss the securities fraud counts as multiplicitous.

The terminology in this area of the law isn't intuitive, and it can be a little confusing at first glance. The words "duplicitous" and "multiplicitous" convey that there is some type of overlap or repetition of some kind. But unless you're familiar with the backroom in this corner of the law, it may not be obvious what the problem is.

In this context, duplicitous means that a single count is duplicative, meaning that it covers more than one thing. It doesn't mean that the charge is sneaky.[1] The idea is that each charge covers more than one alleged crime.

Imagine if Count 1 charged a defendant with robbing a bank *and* committing insider trading. That's duplicitous.

A multiplicitous indictment has a different problem. Multiplicitous means that more than one count covers one offense, meaning one criminal act.

Imagine if Count 1 charged a defendant with robbing a bank, and Count 2 charged the same defendant with the same robbery of the same bank on the same day at the same time under a separate statute with the same elements. That's multiplicitous.

A duplicitous indictment charges more than one offense in a single count. It's two crimes in one count. A multiplicitous indictment has two or more charges with the same elements for the same act. It's two counts for one crime.

Half of Foley's challenge has fallen by the wayside. The jury returned a verdict in Foley's favor on the wire fraud counts (Counts 1–8), so this Court doesn't have to decide whether Counts 1–8 were duplicitous.

Even so, this Court will briefly introduce and touch on the issue of whether the indictment was duplicitous (without deciding the issue), for the limited purpose of ensuring that the reader understands the issue. It helps to set the table for the discussion that follows. That is, it is helpful to understand the difference between a duplicitous indictment and a multiplicitous indictment before deciding whether the indictment was multiplicitous.

---

[1] It doesn't help that the word "duplicitous" can mean both duplicative and sneaky. There is a meta-quality to the fact that the word has more than one meaning. The word *itself* has multiple meanings (which feels sneaky).

2

## I.      Duplicitous

Foley challenged the wire fraud counts by arguing that Counts 1–8 were duplicitous.

"An indictment that charges two or more distinct offenses within a single count is duplicitous." *United States v. Hassebrock*, 663 F.3d 906, 916 (7th Cir. 2011).  One count can't allege two different offenses.

"An indictment is not duplicitous if it charges a single offense that may be carried out through many different means." *United States v. Thomas*, 2025 WL 40368, at *3 (7th Cir. 2025).  "Additionally, an indictment charging multiple acts in the same count, each of which *could* be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense." *Id.* (emphasis in original) (cleaned up); *see also United States v. Lee*, 77 F.4th 565, 571 (7th Cir. 2023) (same); *United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020).

Foley argued that Counts 1–8 described two separate schemes.  So, in his view, the individual counts charged more than one distinct offense.  *See* Mtn., at 8 (Dckt. No. 49).

As Foley saw things, "Scheme 1" involved the purchase and sale of securities that should have been restricted by obtaining Rule 144 letters.  *Id.* at 9.  "Scheme 2" was the "pump and dump" scheme of manipulating the price of the shares.  *Id.*

Foley argued that Counts 1–4 and Counts 6–8 primarily involved Scheme 2, meaning the "pump and dump" scheme.  And Count 5 related only to Scheme 1, meaning the fraud about the restricted shares.  But critically, "all counts contain all allegations of both schemes." *Id.* at 10.  In other words, each count included allegations about both Scheme 1 and Scheme 2.

In Foley's view, the indictment did not connect the separate acts in a single continuing course of conduct.  *Id.*  He thought that the government was trying to tack on Count 5 (about the Rule 144 letters) into a broader scheme for a simple reason.  The conduct about the Rule 144 letters would fall outside the statute of limitations, unless the government could find a way to attach it to a broader scheme.  *Id.* at 12.

The government had a different view.  As the government saw things, only one scheme was in play.  Foley attempted to enrich himself through the sale of stock by fraudulent means. *See* Resp. Brf., at 9 (Dckt. No. 58).

The government believed that the scheme had different chapters, but told one story. First, Foley got his hands on the shares through fraud.  And he used false pretenses to ensure that the shares were unrestricted, meaning that they could be sold to the public.  That way, Foley got his hands on something that he could sell.

Second, Foley increased the value of the shares by manipulating the market through a "pump and dump" scheme.

3

Putting all of that together, Foley got shares through fraud, made them eligible for sale, and inflated the value of the shares through fraud. *Id.* at 10. And then, he sold them.

Basically, Foley allegedly unlocked the ability to sell the shares (through fraudulent means), and then sold the shares at an artificially inflated price (through fraudulent means). The conduct involved a common thread: a fraudulent sale.

So, as the government saw things, there was no "Scheme 1" and "Scheme 2." There was a single scheme to defraud, and Foley carried out that scheme by taking different steps along one path.

It's kind of like hoodwinking a valet into getting the keys to someone else's Hyundai, and then selling the Hyundai to someone else and saying that it's a Ferrari.

According to the indictment, Foley got the keys to the sale (through fraud), and then engaged in a fraudulent sale (at a high price). It took a few steps to get to the landing place, but Foley allegedly landed with money in his pocket.

This Court doesn't need to resolve whether the indictment was duplicitous, given that the jury returned a verdict in Foley's favor on Counts 1–8. For now, the only important thing is to understand what it means for an indictment to be duplicitous.

A duplicitous indictment is different than a multiplicitous indictment. The Court will turn to that issue now, because it's the only live issue on the table.

## II. Multiplicitous

Foley also moved to dismiss the two counts of securities fraud (Counts 9–10) as multiplicitous. Count 9 charged Foley with violating Section 10(b) of the 1934 Act and Rule 10b-5, and Count 10 charged Foley with violating Section 17(a) of the 1933 Act. As Foley sees things, they cover the same terrain.

"A multiplicitous indictment charges a single offense as separate counts." *United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015); *see also United States v. Starks*, 472 F.3d 466, 469 (7th Cir. 2006) (collecting cases); *United States v. Haas*, 37 F.4th 1256, 1260 (7th Cir. 2022) (citing *Hudson v. United States*, 522 U.S. 93, 99 (1997)).

"The traditional test of multiplicity determines whether each count requires proof of a fact which the other does not. If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *Starks*, 472 F.3d at 469 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

The answer depends on the elements, not the evidence. "Applying the *Blockburger* test, we focus on the statutory elements of the charged offenses, not the overlap in the proof offered to establish them, because a single act may violate several statutes without rendering those statutes identical." *See United States v. Muhammad*, 120 F.3d 688, 702 (7th Cir. 1997).

4

By way of example, imagine if Congress passed a statute that prohibited stealing barnyard animals. Then, imagine if Congress passed a statute that prohibited the theft of horses. And then, imagine if the elements of both statutes were exactly the same.

A horse thief could not be charged and sentenced for violating both statutes for stealing one horse. If the elements of both statutes are the same, then stealing one horse is one crime, even if the conduct violates two statutes.

Here, the government brought two counts of securities fraud against Foley, under two different statutes. Count 9 charged Foley with violating Section 10(b) of the Exchange Act of 1934 and Rule 10b-5, and Count 10 charged Foley with violating Section 17(a) of the Securities Act of 1933.

Section 10(b) of the Exchange Act is not quite the same as Section 17(a) of the Securities Act. Section 10(b) and Rule 10b-5 (on the one hand) and Section 17(a) (on the other) form a Venn diagram. They overlap, but not entirely.

The overlap is easy to spot. The Supreme Court and the SEC "have long recognized considerable overlap among the subsections of the Rule and related provisions of the securities laws." *See Lorenzo v. SEC*, 587 U.S. 71, 80 (2019).

For starters, Section 17(a) of the Securities Act and Rule 10b-5 both apply to the "sale" of securities. *See* 15 U.S.C. § 77q(a); 17 C.F.R. § 240.10b-5. So a fraudulent sale of securities could violate both Section 17(a) and Rule 10b-5.

Section 17(a) and Rule 10b-5 apply to almost the same sphere of fraudulent conduct, too. In fact, the description of the covered conduct is almost word-for-word identical.

Section 17(a) describes the covered conduct in three subparts. Section 17(a) makes it illegal for "any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails . . . (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." *See* 15 U.S.C. § 77q(a).

A willful violation of Section 17(a) is a crime. *See* 15 U.S.C. § 77q(a)(1)–(3); *see also* 15 U.S.C. § 77x ("Any person who willfully violates any of the provisions of this subchapter, or the rules and regulations promulgated by the Commission under authority thereof . . . shall upon conviction be fined not more than $10,000 or imprisoned not more than five years, or both.").

In a similar vein, Section 10(b) of the Exchange Act makes it illegal for any person to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." *See* 15 U.S.C. § 78j(b).

A willful violation of Section 10(b) or any rules or regulations (including Rule 10b-5) is a crime. *See* 15 U.S.C. § 78ff (providing that "[a]ny person who willfully violates any provision of this chapter (other than section 78dd-1 of this title), or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of this chapter . . . shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years").

Rule 10b-5 describes the covered conduct in three subparts. Those provisions borrow heavily from the terminology of Section 17(a).

Rule 10b-5 makes it illegal for "any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." *See* 17 C.F.R. § 240.10b-5.

A side-by-side comparison of Section 17(a) and Rule 10b-5 reveals close similarities in the text. The prohibited conduct is nearly identical (stay tuned on "nearly").

For example, consider the prohibitions on making false statements. Section 17(a)(2) prohibits a person from "obtain[ing] money or property by means of any *untrue statement of a material fact* or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *See* 15 U.S.C. § 77q(a)(2) (emphasis added).

Rule 10b-5(b) covers almost the same ground, making it unlawful to "make any *untrue statement of a material fact* or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *See* 17 C.F.R. § 240.10b-5(b) (emphasis added).

Section 17(a) and Rule 10b-5 are close blood relatives. But they're not identical twins. If you stare closely, you can spot a few differences. A close inspection reveals small differences, which sometimes make a big difference.

For example, Section 17(a)(2) refers to obtaining money or property "by means of" a misstatement. *See* 15 U.S.C. § 77q(a)(2). But Rule 10b-5(b) refers to "mak[ing]" a misstatement. *See* 17 C.F.R. § 240.10b-5(b).

Rule 10b-5 requires a defendant to be the "maker" of the false statement, as the Supreme Court explained in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).

6

*See SEC v. Stoker*, 865 F. Supp. 2d 457, 465 (S.D.N.Y. 2012) ("[T]he Court concludes that *Janus* implicitly suggests that Section 17(a)(2) should be read differently from, and more broadly than, Section 10(b)."). So on this point, Section 17(a)(2) is broader than Rule 10b-5 – a defendant doesn't have to be the so-called "maker" to violate Section 17(a)(2). The existence of the word "make" in Rule 10b-5 made a big difference.

As a second example, the prepositions differ a little, too. Section 17(a) refers to actions "*in* the offer or sale of any securities" while Section 10(b) refers to actions "*in connection with* the purchase or sale[] of any security." *See* 15 U.S.C. §§ 77q(a), 78j(b) (emphasis added); *see also* Loss, Seligman and Paredes, Securities Regulation, Ch. 9.A.1 (6th & 7th ed. 2025) ("[T]he Commission adopted Rule 10b-5 . . . which merely borrows the language of §17(a) (except for the reference in Clause (2) to obtaining [']money or property['] by means of an untrue statement or half truth and the substitution in Clause (3) of ['act'] for §17(a)'s ['transaction']) and applies that language ['in connection with'] the purchase or sale of any security[.]").

Despite the textual differences, courts often treat the elements as essentially the same. *See, e.g.*, *SEC v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995); *see also SEC v. GPL Ventures LLC*, 2022 WL 158885, at *8 (S.D.N.Y. 2022) ("I find that the Complaint plausibly alleges the requisite elements to sustain claims under Section 10(b) and Rule 10b-5, and because of the overlap, claims under Section 17(a) as well."); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 531 (7th Cir. 1985); *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *see also Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019) ("interpret[ing] § 17(a)(3) coextensively with Rule 10b-5(c)").

"The elements of a claim under § 17(a) of the Securities Act, which prohibits fraud in the 'offer or sale' of a security, 15 U.S.C. § 77q(a), are '[e]ssentially the same' as the elements of claims under § 10(b) and Rule 10b-5." *See SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)); *see also SEC v. World Tree Financial, LLC*, 43 F.4th 448, 460 (5th Cir. 2022) ("Section 17(a) of the Securities Act outlaws 'substantially the same' conduct as Section 10(b) and Rule 10b-5.") (citation omitted); *SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008) (recognizing that Section 17(a) requires "substantially similar proof" as Section 10(b) and Rule 10b-5); Loss, Seligman and Paredes, Securities Regulation, Ch. 9.B.3 (6th & 7th ed. 2025) ("So he came upstairs and I called in my secretary and I looked at Section 10(b) and I looked at Section 17, and I put them together, and the only discussion we had there was where 'in connection with the purchase or sale' should be, and we decided it should be at the end.") (quoting Milton Freeman, Conference on Codification of the Federal Securities Laws, 22 Bus. Law. 793, 921–23 (1967)).[2]

---

[2] Many of the cases are in the civil enforcement context involving the SEC, not the criminal prosecution context. But the only aspect that changes between the civil context and the criminal context is the *mens rea* requirement to find a violation. Civil cases involve negligence or scienter (depending on the provision), but criminal cases involve willfulness. *See* 15 U.S.C. § 77x (requiring willfulness for a criminal violation of Section 17(a)); 15 U.S.C. § 78ff (requiring willfulness for a criminal violation of Section 10(b)). On the *actus reus* side of things, courts have applied the "sameness" of the elements of Section 17(a) and Section 10(b) violations from civil enforcement cases to criminal prosecutions. *See, e.g.*, *United States v. Rudi*, 902 F. Supp. 452, 458 (S.D.N.Y. 1995) (citing in the criminal context the Supreme Court's conclusion from a civil enforcement case that Section 17(a) and Section 10(b) "overlap"

The overlap is so great that courts often apply collateral estoppel based on the same facts to claims under Section 17(a) and claims under Section 10(b) and Rule 10b-5. *See, e.g.*, *SEC v. Namer*, 2004 WL 2199471, at \*3 (S.D.N.Y. 2004) ("The courts of this District have noted, for collateral estoppel purposes, the overlap between claims under section 17(a) and those under section 10(b) and Rule 10b–5."); *SEC v. Braslau*, 2016 WL 5922666, at \*4 (C.D. Cal. 2016); *SEC v. Alexander*, 115 F. Supp. 3d 1071, 1083 (N.D. Cal. 2015); *SEC v. Bravata*, 3 F. Supp. 3d 638, 656–57 (E.D. Mich. 2014).

Maybe the biggest difference between Section 17(a) and Rule 10b-5 involves offers and purchases. Section 17(a) applies to offers, and Rule 10b-5 applies to purchases.

Section 17(a) of the Securities Act applies to an "offer or sale." *See* 15 U.S.C. § 77q(a). But Rule 10b-5 applies to a "purchase or sale." *See* 17 C.F.R. § 240.10b-5; *see also SEC v. Tourre,* 2013 WL 2407172, at \*6 (S.D.N.Y. 2013) ("Section 17(a) is not exclusively concerned with fraudulent conduct in connection with a transaction in securities, but rather is concerned with such conduct in either the offer or the sale of securities . . . ."); Loss, Seligman and Paredes, Securities Regulation, Ch. 9.A.1 (6th & 7th ed. 2025) ("[U]nlike §17(a), [§10(b)] covers fraud in the purchase as well as the sale of securities.").

Tying it all together, Section 17(a) and Rule 10b-5 have a lot of similarities, but a few differences. Both govern the *sale* of securities. But Section 17(a) applies to offers, not purchases. And Rule 10b-5 applies to purchases, not offers.

Put another way, Section 17(a) applies to A & B, and Rule 10b-5 applies to B & C. Section 17(a) applies to offers and sales (but not purchases), and Rule 10b-5 applies to sales and purchases (but not offers).

An offer without a sale can violate Section 17(a), but cannot violate Section 10(b) and Rule 10b-5, because only Section 17(a) applies to an "offer" of securities that did not lead to a sale. By the same token, only Section 10(b) and Rule 10b-5 apply to a "purchase." But a *sale* can violate *both* Section 10(b) and Rule 10b-5 (on the one hand) and Section 17(a) (on the other), because both statutes cover a "sale" of securities.

With all of that text in mind, Foley moved to dismiss Counts 9 & 10 as multiplicitous. Foley pointed out that both counts charged him with fraud in connection with the sale of stock. The motion was about the common ground – both Section 17(a) and Rule 10b-5 apply to sales.

In response, the government pointed out that Section 17(a) and Rule 10b-5 do not entirely overlap. *See* Resp. Brf., at 17 (Dckt. No. 58). Section 17(a) applies to offers, and Rule 10b-5

---

but are not "coextensive" because Section 17(a) governs "offer[s] and sale[s]" while Section 10(b) governs "purchase[s] or sale[s]"); *United States v. Yeaman*, 987 F. Supp. 373, 377 n.4 (E.D. Pa. 1997) (applying to the criminal context *Maio*'s reasoning in a civil enforcement case that "the proscriptions contained in Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a) of the Securities Act are substantially the same").

applies to purchases. So the counter-argument was about the differences – Section 17(a) and Rule 10b-5 each apply to something that the other doesn't reach.

The Court agrees that the original indictment was potentially multiplicitous, at least in part. If the case had gone to trial on the original indictment, Foley might have had a point.

Count 9 charged Foley with violating Section 10(b) of the Exchange Act of 1934 and Rule 10b-5, which apply to a purchase or a sale. There is no multiplicity problem to the extent that Count 9 is about a *purchase*, because Section 17(a) doesn't apply to purchases. It applies to offers.

On the flipside, Count 10 charged Foley with violating Section 17(a) of the Securities Act of 1933, which applies to an offer or a sale. There is no multiplicity problem to the extent that Count 10 is about an *offer*, because Rule 10b-5 doesn't apply to an offer. It applies to purchases.

But the overlap raises a potential problem. Both Section 17(a) and Rule 10b-5 apply to the *sale* of securities. Foley can't get convicted and sentenced for the same sale of securities under both Section 17(a) and Rule 10b-5 because the elements are the same (again, when it comes to sales).

When a defendant is charged separately under both Section 17(a) and Section 10(b) (and Rule 10b-5) for the same *sale*, and when each charge involves the same type of violation (*e.g.,* a false statement, or a scheme, and so on), there is functionally no difference in the elements of the crime under either statute (with a few possible exceptions, like whether someone was a "maker").

The overlap raises a multiplicity problem. Foley cannot get punished for violating both statutes for the same conduct when it comes to the same *sale* of securities. The elements of fraud in connection with a sale of securities under Section 10(b) and Rule 10b-5 are the same as the elements of fraud in connection with a sale of securities under Section 17(a). The elements might be different if the charge involved a purchase (only), or an offer (only). But the elements are the same when it comes to a *sale*.

If the elements are the same when it comes to a sale, then Foley cannot be charged, convicted, and sentenced for violating both statutes for the same conduct and the same sale. Again, that double-barreled punishment would raise multiplicity concerns.

Alleging a violation of both statutes for the same conduct is not hitting two birds with one stone. It's throwing the same stone at the same bird twice.

To borrow another animal-based idiom, the government needed to pick a horse. Foley can't be charged, convicted, and sentenced for fraud in connection with the sale of securities under Section 17(a) *and* be charged, convicted, and sentenced for fraud in connection with the sale of securities under Rule 10b-5, if each charge is about the same sale.

Even so, there are two reasons to deny the motion.

9

First, the government *did* pick a horse. Before trial, the government moved to amend the indictment. The government moved to strike the phrase "and sale" from Count 10, meaning the charge under Section 17(a).

This Court granted the motion, and the government filed an amended indictment before trial. *See* Am. Indictment (Dckt. No. 165).

The jury instructions reflected the change. As this Court instructed the jury, Count 9 involved the "purchase or sale" of shares, and Count 10 involved the "offer of shares." *See* Jury Instructions, at 27–29 (Dckt. No. 215). Count 10 made no mention of a "sale."

That revision solved any conceivable multiplicity problem. Count 9 charged Foley with securities fraud in connection with the purchase or sale of securities, in violation of Section 10(b) and Rule 10b-5. Count 10 charged Foley with securities fraud in the offer (but *not* sale) of securities, in violation of Section 17(a).

The amended indictment eliminated the overlap. And in the process, it eliminated the multiplicity problem.

Second, courts do not automatically dismiss indictments, even if they are multiplicitous because dismissal of counts is not the sole remedy for a multiplicitous indictment. After all, "[Section 17(a) and Rule 10b-5] are often charged together." *See* 21 Marvin G. Pickholz, Peter J. Henning and Jason R. Pickholz, *Sec. Crimes* § 7:12 (2d ed. 2013).

After permitting trial on multiplicitous counts, both of which resulted in convictions, "courts have found it proper to dismiss the lesser charge and enter judgment on the greater offense." *See* Andrew D. Leipold, 1A Fed. Prac. & Proc. Crim. (Wright & Miller) § 146 (5th ed. 2024). "The principal danger in multiplicity [is] that the defendant will be *given multiple sentences* for the same offense," not charged multiple times. *See United States v. Reed*, 639 F.2d 896, 905 n.6 (2d Cir. 1981) (emphasis added). This danger "can be remedied at any time by merging the convictions and permitting only a single sentence." *Id.*

So, the amended indictment does not have a multiplicity problem. Even if it did, this Court could fix it at sentencing. But there is no need, because the problem already got solved.

### Conclusion

For the foregoing reasons, Defendant Foley's motion to dismiss the wire fraud counts (Counts 1–8) as duplicitous is denied as moot. The motion to dismiss the securities fraud counts (Counts 9–10) as multiplicitous is denied.

Date:  April 2, 2026

Steven C. Seeger
United States District Judge